# Alpenwald Improvement Corporation v. Terrance E. Kelly and Tina M. Kelly

[571 A.2d 624]

No. 88-459

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ.**

Opinion Filed December 1, 1989

Motion for Reargument Granted January 2, 1990*

*Bradley D. Myerson,* Manchester Center, for Plaintiff-Appellant.

*Witten, Saltonstall & Woolmington, P.C.,* Bennington, for Defendants-Appellees.

**Morse, J.** Alpenwald Improvement Corporation appeals from dismissal of its complaint seeking removal of defendants' garage and shed claimed to have been erected at an unapproved location (within fifty feet of the road) in violation of certain restrictive covenants. The sole issue is the validity of a setback requirement imposed on homeowners under a protective covenant which requires approval of the proposed location of any building to be erected. We hold that the trial court erred in dismissing the complaint and accordingly reverse and remand for further proceedings.

---

* Note. The grant of reargument went only insofar as to incorporate revisions in the original opinion; these revisions are included in this publication.

Plaintiff is the developer of Alpenwald Development, a 500-lot development in Readsboro, Vermont. As such, it may enforce certain restrictive covenants as recorded in a Declaration of Protective Property Rights that was referenced in the deeds to all the parcels. *McDonough v. W.W. Snow Construction Co.*, 131 Vt. 436, 441, 306 A.2d 119, 122 (1973). The covenant in question reads: "[A]ll building plans for any building . . . to be erected upon any lot and the proposed location thereof upon any lot . . . shall require the approval [of Alpenwald]." The covenant also provides that no building may be erected without prior approval. The Declaration does not specify a setback requirement.

According to the testimony of Alpenwald's president, since the early 1970's the developer has required that all structures be set back from the road's edge at least fifty feet (seventy-five feet from the road's centerline). Of about eighty lots developed to date, two were allowed a setback less than fifty feet for hardship reasons.

In 1983, defendants purchased a lot in Alpenwald Development, with notice of the covenants, and built their residence as approved by Alpenwald in accordance with the Declaration. In 1986, they decided to build a shed and garage that would intrude substantially into the setback area. Although they were aware that Alpenwald considered approval necessary and insisted on a fifty-foot setback, defendants proceeded to build without approval.

The trial court, in dismissing Alpenwald's complaint, reasoned that the setback requirement was unenforceable because it was not expressly included in the recorded Declaration. We disagree.

The Declaration gave all purchasers notice that their building plans would be subject to the developer's approval and that one of the factors considered would be the location of the structure. While the Declaration did not expressly require a fifty-foot setback, it was reasonable to expect that in reviewing the location of a proposed building, Alpenwald would consider, among other things, its distance from the road. The Declaration was sufficient to place defendants on notice that any buildings they planned would be subject to reasonable location restrictions, such as the fifty-foot setback. It is hard to imagine what else the covenant at issue might mean to those bound by it. See *Addison County Automotive, Inc. v. Church*, 144 Vt. 553, 558, 481 A.2d 402, 406 (1984)

(restrictive covenants to be construed to give effect to parties' intent as gathered from language used); *Syrian Antiochian Orthodox Archdiocese v. Palisades Assoc.*, 110 N.J. Super. 34, 41, 43, 264 A.2d 257, 258, 262 (1970) (covenant requiring approval of building plans, including "the location of the proposed improvement upon the plot," held enforceable so long as refusal to approve plans is reasonable, in good faith and not arbitrary or capricious).

The setback requirement, as described by plaintiff's witness, is not more restrictive than the express covenants in the Declaration. To the contrary, it gave defendants notice of one key factor upon which Alpenwald's approval of building locations would rest, thereby easing the potential restrictiveness of an otherwise open-ended approval requirement contained in the Declaration. The setback requirement in fact reduces the tendency of approval to be "arbitrary, capricious, and therefore unreasonable," the concern expressed in *Seabreak Homeowners Ass'n v. Gresser*, 517 A.2d 263, 268 (Del. Ch. 1986).

We conclude that the trial court erred in dismissing Alpenwald's complaint on the ground that an unwritten setback requirement could not be enforced.

*Reversed and remanded.*

**Dooley, J.,** dissenting. Almost twenty years after the subdivision in this lot was created and well after zoning went into effect and regulated the details of property use, the plaintiff is being allowed to bring a suit to enjoin a proposed use that offends no specific requirement of the restrictive covenants and has received a variance under our very strict requirements. I find this holding to be inconsistent with the principles underlying our law on construction of covenants and, accordingly, dissent.

At least since *Latchis v. John*, 117 Vt. 110, 85 A.2d 575 (1952), our rule on construction of restrictive covenants has been: "restrictions will not be extended by implication to include anything not clearly expressed, and doubts must be resolved in favor of the free use of land." *Id.* at 113, 85 A.2d at 577. The covenants in this case are nine pages long and contain lengthy, detailed requirements that property owners must meet. For example, all residences must have a minimum ground floor area of 600 square feet

and "must be of a design in harmony with the other houses erected" in the development. As another example, the exterior of each residence must have at least two coats of paint, stain or varnish and any exterior concrete block must be painted with two coats of masonry paint. As a further example, the covenants give the plaintiff specific control over the "location, color, size, design, lettering and all other particulars" of any mailbox.

In addition to the many pages of specific restrictions, section (2) of the covenants requires the building plans for any "building, fence, wall or structure" or for any "remodeling, reconstruction, alteration or addition" to be submitted for approval by the plaintiff. The trial court construed this provision as an adjunct to the specific restrictions in the covenants and not as a source of power to impose new restrictions not contained in the covenants. Without saying why, the majority rejects this construction in favor of one that allows the plaintiff to impose any additional restrictions that this Court finds are reasonable.

The trial court's construction is more consistent with our rule as stated in *Latchis* and the better reasoned holdings from other states. Nowhere does section (2) of the covenants state that the approval requirement allows the plaintiff to adopt and enforce new restrictions not contained in the covenants. The majority is adding this power by implication where it is not clearly expressed and resolving doubts in favor of restrictions. Indeed, it is difficult to conceive why there are nine pages of covenants dealing with coats of paint and mailboxes if plaintiff has the power to prohibit and regulate any use.

A number of courts have taken the position that a discretionary approval covenant will not permit the approving authority to impose limitations more restrictive than the specific restrictions affecting the lot owner's use of the property. See, e.g., *Seabreak Homeowners Ass'n v. Gresser*, 517 A.2d 263, 268 (Del. Ch. 1986); *Voight v. Harbour Heights Improvement Ass'n*, 218 So. 2d 803, 806 (Fla. Dist. Ct. App. 1969); *Lushing v. Riviera Estates Ass'n*, 196 Cal. App. 2d 687, 691, 16 Cal. Rptr. 763, 765 (1961). The rule of construction seems appropriate in a case like this where the covenants are so lengthy and detailed that it would be wholly incongruous to find that a general approval requirement can create a

new set of restrictions. Contrary to the majority's conclusion, I believe that a purchaser reading the covenants is not put on notice that additional restrictions might be imposed. Nor is there notice that there is "one key factor upon which Alpenwald's approval of building locations would rest" as the majority concludes.* If, in fact, there is one key, uniform factor, the purchaser would expect that it be itemized somewhere in the nine pages of detailed regulations.

The Texas Supreme Court has recently adopted a rule that looks directly to the notice to the lot owner. In *Davis v. Huey*, 620 S.W.2d 561, 566 (Tex. 1981), the court held that "covenants requiring submission of plans and prior consent before construction are valid insofar as they furnish adequate notice to the property owner of the specific restriction sought to be enforced." See also *Whiteco Metrocom, Inc. v. Industrial Properties Corp.*, 711 S.W.2d 81, 82–83 (Tex. Ct. App. 1986) (covenants enforceable against purchaser with actual or constructive notice of the scheme). In this case, the defendants knew that they had to build "in harmony" with other residences in the development. I do not believe that such a restriction conveys adequate notice that plaintiff would enforce a fifty-foot setback requirement even when defendants' use met the hardship standards applicable for zoning variances in this state. I would affirm.

---

* The factual development has been limited in this case, and defendants put on no evidence before the court's ruling. Thus, we have no knowledge of whether other restrictions are imposed under the approval power, either on a general or individual basis.