[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the Zoning Board of Appeals of the City of Stamford denying plaintiffs' application for a special exception to locate a youth shelter facility at 1128 Newfield Avenue in an RA-1 district. The plaintiff, Youth Shelters, Inc., is the contract purchaser and the plaintiff, Sally Albrecht Hughes, is the contract seller of the property in question.
The published application read, in pertinent part:
"Application of The Youth Shelter, Inc. and Sally Albrecht Hughes for a special exception as authorized by Section 19-3.1 through 19-3.4 and Appendix A (Land Use Schedule), Table 1, item CT Page 393 29, Definition 69 (Nursing Homes, including convalescent or rest homes) to construct and operate a home for children through age seventeen (17) who are in need of a respite or convalescent facility. The current average length of stay is fourteen (14) days. By policy, the maximum stay is twenty-one (21) days, although extensions may be granted. The maximum number of children to be housed at any one time will be twenty (20), plus necessary staffing. Said property is located on the west side of Newfield Avenue, in an RA-1 zone, and is known as 1128 Newfield Avenue. . . . ."
Four members of the Board of Appeals (the fifth member withdrew during the public hearings phase and no successor was appointed), voted on the application. Before addressing the merits of the application, the Board decided to deal initially with the issue of whether or not the proposed use complied with the meaning of "Nursing Home" under Definition 69 of the Regulations. Three members voted that it did, one member voted that it did not. Since the affirmative vote of four members is required for any approval, the application was denied.
In their appeal, the plaintiffs claim (1) that the decision of the board that the proposed use did not constitute a nursing home was improper; (2) that the applicant satisfied all requirements for a special exception and that the Zoning Board of Appeals had no discretion but to approve the application; and (3) that the applicants were denied their right to have the application ruled on by five rather than only four members.
Definition 69 of the Stamford Zoning Regulations defines "Nursing Homes" as:
"Convalescent or rest homes, not including hospitals, clinics or sanitariums, and not institutions of penal or correctional nature, nor for the care of insane or feebleminded patients and provided that any building so exceptioned shall be located not less that forty (40) from any street or lot line and be appropriately screened and landscaped."
A "nursing home" is a permitted use in the RA-1 district subject to the special exception provisions of Section 19 of the Regulations. (Stamford Zoning Regulations, Section 4AA 1.3(1)).
The applicant Youth Shelter is an existing child care facility which maintains a shelter in Greenwich. While The CT Page 394 Youth Shelter, Inc. is licensed by the Connecticut Department of Children and Youth Services under the provisions of Chapter 319
of the General Statutes, it is not a nursing home facility licensed by the Department of Health Services under the provisions of Chapter 386v of the General Statutes. In the opinion of the acting zoning enforcement officer, the proposed use qualified as a "nursing home" under Definition 69 of the Zoning Regulations. There was enough substantial evidence presented to the Board that proposed use qualified as a "nursing home" under the regulations to persuade three of the four voting members of that status.
 I.
This court has examined the record before the Board and the transcript of the executive session of the Board on April 27, 1992, at which the Board voted on the issue. It is quite apparent that the dissenting Board member determined that the applicant did not qualify under the definition of "nursing home" set forth as a special exception use in the zoning regulations because it did not meet the requirements of an institution licensed as a "nursing home" under the "nursing home" provisions of Chapter 368v of the General Statutes. (Return of Record, Transcript of 4/27/92, pp. 3-5, 7, 9, 29-32, 36, and 38).
The Stamford Zoning Regulations Definition 69 does not require that a "nursing home" be licensed under the provisions of Chapter 386v of the General Statutes in order to qualify as a special exception use and does not limit the use to the type of health care institution regulated by the provisions of Chapter 386v. Moreover, the record indicated that in a previous application, the Board has not deemed the definition of a "nursing home" so limited. An earlier special exception as a "nursing home" was allowed for the Meridian House, a home for convalescent alcoholics, which was not licensed under Chapter 386v. Thus, the dissenting member caused the application to be denied by fixing a condition which was not contained in the regulations and had not previously been found necessary by the Board to establish a special exception use.
"The zoning regulations, and not the board, determine what uses may be allowed as special exceptions. The function of the board in this connection is to determine whether or not a proposed use falls within one of the special exceptions expressly permitted by the regulations." WATR, Inc. v. Zoning CT Page 395 Board of Appeals, 158 Conn. 196, 200, 257 A.2d 818 (1969), citing Jeffrey v. Planning Zoning Board of Appeals, 155 Conn. 451,461, 232 A.2d 497 (1967).
If a special permit application conforms with the standards in the statutes and in the agency's existing regulations, it must be approved A.P. W. Holding Corporation v. Planning and Zoning Board, 167 Conn. 182, 185, 355 A.2d 91 (1974); Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53,56, 549 A.2d 1076 (1988). The agency cannot require the applicant to meet conditions not contained in the regulations themselves. DeMaria v. Planning and Zoning Commission,159 Conn. 534, 540-41, 271 A.2d 105 (1970); Farina v. Zoning Board of Appeals, 157 Conn. 420, 422, 254 A.2d 492 (1969); Powers v. Common Council, 154 Conn. 156, 160, 222 A.2d 337 (1966). The agency cannot impose a condition upon a special permit unless its own regulations authorize it. Parish of St. Andrews Church v. Zoning Board of Appeals, 155 Conn. 350, 354, 232 A.2d 916
(1967); Beckish v. Planning and Zoning Commission, 162 Conn. 11,17, 291 A.2d 208 (1971). A special permit can only be denied for failure to meet specific standards in the regulations themselves. Kosinski v. Lawlor, 177 Conn. 420, 423,418 A.2d 66 (1979); Demaria v. Planning and Zoning Commission, supra, 541.
Since the application was denied because a condition was imposed upon the special permit application which the regulations did not authorize, the court must find that the board acted illegally.
 II.
The plaintiffs urge that since the basis for denying the special exception use was invalid and since no other valid objection is apparent from the record which would prevent approval of the proposed use under Definition 69, the Board of Appeals, acting in an administrative capacity, was required by law to grant the application and this court should so order.
The plaintiffs argue and the record would seem to indicate that the application meets the building requirements for an RA-1 District as to minimum lot area, minimum frontage, maximum building coverage, maximum building height, minimum yard setbacks, and on-site parking. In fact, there seems to have been no dispute that these minimum requirements for an RA-1 zone CT Page 396 were met by the application.
As to concerns expressed at the public hearing about over-intensive use, traffic considerations and the effect on property values, the plaintiffs urge that the Connecticut courts have determined that once a plaintiff's application is found to be a permitted use within the zoning regulations, any additional issues are not relevant.
"The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." TLC Development, Inc. v. Planning Zoning Commission, 215 Conn. 527,532-33, 577 A.2d 288 (1990). See, also Sowin Associates v. Planning Zoning Commission, 23 Conn. App. 370, 374-75, A.2d (1990).
The position taken by the plaintiffs is, however, contrary to the opinion expressed by the Appellate Court in Connecticut Health Facilities, Inc. v. Zoning Board of Appeals, 29 Conn. App. 1, A.2d (1992). The Appellate Court in TLC Development drew a distinction between an authority acting in an administrative capacity when reviewing a special exception application and in a ministerial capacity or process when reviewing site plans and subdivision applications. The Appellate Court stated that Connecticut courts have never held that a zoning authority lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. The Appellate Court appeared to limit any conclusive presumption rule to the "ministerial process" engaged in by a board in reviewing site plans or subdivision applications. Id, at 6. And TLC Development, supra, did involve a site plan approval, while Sowin Associates, supra, did involve a subdivision application.
The Appellate Court found that the Board of Appeals, when considering an application for a nursing home special exception permitted in a residential zone, has discretion to consider the standards and factors set forth in Section 19.3.2. of the Regulations, including, inter alia, ". . . proposed size, scale and arrangement of structures, drives, parking areas and the proximity of existing dwellings and other structures, . . the nature and intensity of the proposed use in relation to its site CT Page 397 and surrounding area, . . . effect upon the neighborhood, . . . . traffic patterns. . . ." Connecticut Health Facilities, Inc. v. Zoning Board of Appeals, supra, 9-11.
In the present case, the Board of Appeals received information from the applicants and others at the public hearings concerning these issues. However, it never addressed merits of the application because of its conclusion that the application did not meet the definition of a nursing home under the regulations. As indicated, that conclusion was erroneous because an improper condition was applied.
While the plaintiffs may disagree with the reasoning of the Appellate Court in Connecticut Health, this court is bound by that decision and must find that even though the use proposed by the plaintiffs were a permitted special exception use as a nursing home in the RA-1 zone, the Board of Appeals may still exercise its discretion in determining whether to grant or deny the application. The court cannot find from the record that the only possible conclusion is that plaintiffs have satisfied the conditions set forth in Section 19.3.2.
This court then, must sustain the appeal since the record clearly indicates that the reason the application was denied was because the dissenting member improperly imposed licensing by the State Department of Health as a condition for the Definition 69 "nursing home" exception. While explicit remand of the matter to the Board of Appeals is not necessary; Bogue v. Zoning Board of Appeals, 165 Conn. 749, 354 A.2d 9 (1974), the court does remand the matter to the Board of Appeals to proceed with the application in accordance with the law.
IT IS THEREFORE ORDERED, that the appeal is sustained and the matter is remanded to the Stamford Board of Zoning Appeals to proceed with the application in accordance with the law.
NIGRO, J. CT Page 398